JOHN H. BOLTZ ET AL.

v.

A. C. HUSTON.

*Agency—Authority—Agent to Take Orders—Mistake—Notice—Estoppel* $\begin{vmatrix} 23 & 579 \\ 215 & 7 & 34 \end{vmatrix}$
*—Letter Head as Evidence.*

1.   One who deals with an agent is bound at his peril to advise himself of the agent's authority.

2.   The authority of an agent to take orders does not include the right or authority to take and deal with the principal's goods.

3.   In the case presented, it is *held:*   That the defendant had no right to deliver the goods of the plaintiffs to their agent; that he should have advised them earlier of the mistake in the order; that notice to the agent was not notice to them; and that having used part of the goods and delivered part to the agent he was estopped from denying that he had accepted them.

[Opinion filed July 27, 1887.]

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

This action was brought to recover for 5,000 cigars shipped by appellants to appellee on the order of one C. J. Miller. Appellants furnished said Miller with a line of samples of these cigars and he solicited orders for cigars and sent them to appellants at Philadelphia, who filled them, if they accepted the orders, and shipped the goods direct to the purchasers, drew on them for the price at which goods were sold, and from and after the acceptance of the orders dealt directly with the purchaser, paying Miller commissions on such orders as they accepted.   Appellee had given appellants several orders for goods through Miller, which they had filled, shipping the goods direct to appellee and drawing on him for the amount of the bill.   Early in August, 1884, appellants received from Miller the following order:

"Messrs. BOLTZ, CLYMER & Co., Gentleman:

   "Please ship to A. C. Huston, 39th and Cottage Grove

Avenue, 5 M. Landers Grandes, at $65, and 5 M. Heris Luck (favorite stock) in 1–2os., same as before at $30 per M.   Ship the $30 doll goods as soon as possible, and the $65 doll goods on the 25th of this month (August).   Draw on him for acceptance through H. Christoph as usual.

Yours,

Chas. Jay Miller."

On receipt of the above order appellants wrote to appellee as follows:

" August 9, 1884.

" Mr. A. C. Huston, Chicago, Ill.:

" *Dear Sir*—We beg to acknowledge the receipt of your order through Mr. C. J. Miller for 5  M. Heris Luck, 1–2os. at $30 per M., to be shipped at once; and also 5 M. Non Plus Untra (Lon. Grands), 1–1 os., at $65, to be shipped on the 25th instant, which we have booked and hope to be able to ship the former on or about the 20th instant, which time it required to make the special box for you, while the Grands we shall forward in due  time.

" Very Resp.,

" Boltz, Clymer & Co."

This letter was mailed to appellee on the day of its date, and on August 21st, thereafter, the 10,000 cigars mentioned therein were shipped to appellee, and bills for each 5,000 were mailed to him stating the terms of the sale and the prices.

Appellee was not at home when the cigars arrived, but September 12, 1884, came home and found the cigars, and found by the bill that 10,000 cigars had been sent to him. He then notified Miller that appellant had sent him 10,000 and he had only ordered 5,000.   Miller said it was all right; he would take the other 5,000 and dispose of them, and he obtained appellee's consent to leave them on store with him for a time.   On the maturity of the first bill in November, appellants drew on appellee for $150, the amount of the bill, and the draft was paid.   On December 4th they drew another draft for $325 for the other 5,000 cigars and the draft was returned unpaid.

In December a fire occurred at appellee's place in which the 5,000 cigars were slightly damaged, and then appellee hunted up Miller and asked why he had not taken the cigars away. Miller shortly after took away 3,000 of the cigars and appellee kept 2,000 of them and forwarded to appellants a draft for the price, $130, which appellants refused to accept. On February 4, 1885, appellee wrote to appellants for the first time, explaining to them that he had ordered but 5,000 cigars and declining to pay for the other 5,000, but only for the 2,000 of them which he had used. Miller had no authority to settle differences or collect money for appellants and had never done so except on one occasion, when he was given special directions. Miller used a letter head, on the top of which were two pictures of buildings—one purported to be a picture of Boltz, Clymer & Co.'s house in Philadelphia and one purporting to be a picture of S. J. Horner & Co.'s, Louisville, with the words, "Chas. Jay Miller & Co., Manufacturer's agents, tobacco and cigars, 62 Wabash Av., Chicago." This letter head was printed in Chicago by Miller. There was no evidence that appellants knew anything of it, and it was not proven to have been seen by appellee until nearly six months after the cigars in question were received by him.

Upon these facts the County Court found for appellee and rendered a judgment for costs against appellants, who properly excepted to the finding and bring the case to this court for review.

Messrs. Jameson, Marston & Augur, for appellants.

It is the duty of a party dealing with an agent to ascertain, by inquiry, the nature and extent of the agent's authority. Paley on Agency, note, page 199; Kent Com., Vol. 1 (Holmes' notes, 12th Ed. p. 621); The Sterling Bridge Co. v. Baker, 75 Ill. 139; Peabody v. Hoard, 46 Ill. 242; Davidson v. Porter, 57 Ill. 300; Baxter v. Lamont, 60 Ill. 237; Reynolds v. Ferree, 86 Ill. 570; Abrahams v. Weiller, 87 Ill. 179.

The principal is bound by only those acts of his agent which are within the scope of the authority he holds him out to the

world to possess, whether general or special. Story on Agency, Sec. 127, note; Jeffrey v. Bigelow, 13 Wend. 518.

An agent has no authority to satisfy a debt of his principal, except for money, or to assume the debt and release the debtor, unless specially authorized so to do. Ingersoll v. Banister, 41 Ill. 388.

Nor can an agent use his principal's property to pay his own debt. Ingersoll v. Banister, 41 Ill. 388; Rusk v. Newell, 25 Ill. 226; Trustees, etc., v. McCormick, 41 Ill. 323.

Agents are held strictly to the line of their employment; and any deviation must be allowed, and shown to be allowed, by usage, by the custom of the trade, or by special authority from the principal.

Hence, an agent:

(a.) To sell on credit, can not collect. Clark v. Smith, 88 Ill. 298; Reynolds v. Ferree, 86 Ill. 570; Abrahams v. Weiller, 87 Ill. 179.

(b.) To solicit orders, can not collect. Reynolds v. Ferree, 86 Ill. 570; Abrahams v. Weiller, 87 Ill. 179.

(c.) To sell, can not rescind the contract of sale. Diversey v. Kellogg, 44 Ill. 114; Story on Agency, Sec. 78, 101; Bradford v. Bush, 10 Ala. 386.

(d.) To collect a note, can not commute the debt, or release it, or pledge the note. Padfield v. Green, 85 Ill. 529; Story on Agency, Sec. 99.

(e.) To collect and distribute, can not release without payment. Melvin v. Lamar Ins. Co., 80 Ill. 446.

(f.) To make a contract, can not receive money due on the contract. Thompson v. Elliott, 73 Ill. 221; Story on Agency, Sec. 98 and cases cited; Higgins v. Moore, 34 N. Y. 417.

(g.) To loan money, can not collect. Cooley v. Willard, 34 Ill. 68.

(h.) To travel and solicit orders, can not cancel the contract and receive back the goods shipped, if not satisfactory to a customer, unless specially authorized. Diversey v. Kellogg, 44 Ill. 114.

Messrs. CONDEE & ROSE, for appellee.

Boltz v. Huston.

Our position is, that where Miller had power to bind the plaintiffs by an *express* promise which might be made to him by the defendant, when by him accepted, notice to him by the defendant which would prevent an *implied* promise, is good notice to the plaintiffs.

Notice to the agent, while engaged in the business of the principal in matters within the scope of the agency, is notice to the principal. Varnum v. Milford, 4 McLean, 93; Boyd v. Vanderkemp, 1 Barb. Ch., 273; Sutton v. Dillage, 3 Barb. 529.

"Where a principal objects to the act of his agent as unauthorized, the question is not what power he intended to give his agent, but what power the third person who dealt with the agent, and who insists on his acts as valid, had a right to infer that he possessed from his own acts and those of his principal." Perkins v. Washington Ins. Co., 4 Cow. 645.

In the case of Columbian Ins. Co. v. Cooper, 50 Pa. St. 331, an insurance case, the Supreme Court of Pennsylvania held the company bound by any notice that came to its agent to take applications.

*Per Curiam.* There is nothing whatever in the course of dealing between appellee and appellants through the agent, Miller, which would warrant appellee in concluding that said Miller had any authority further than to take orders for cigars and forward them to appellants for acceptance after the order was taken. Appellee had dealt exclusively with appellants in all their previous transactions.

We have searched this record in vain to find any evidence that would justify appellee in dealing with Miller on the assumption that he was anything more than a mere solicitor of orders for appellants.

If appellants had known of the pictured letter head it would not have furnished evidence which would justify such assumption, but there is no evidence that they were at all aware of Miller's use of such letter head. There is then no ground whatever for implying authority or a holding out from such a source. A party who deals with an agent is bound at his

peril to advise himself of the agent's authority, and an authority to take orders does not include the right or authority to take and deal with the principal's goods. Appellee had no right to deliver to said Miller any of the cigars, and doing so was equivalent to a conversion of them to his own use. We are of opinion that it was the duty of appellee to have advised appellants, within a reasonable time of the mistake in the order, if there was such mistake, and that notice to Miller was no notice to appellants under the facts in this case.

The notice, given in February, after he had taken 2,000 of the cigars himself and allowed Miller to take away the other 3,000, was not reasonable. He was, after having so dealt with the cigars, estopped to deny that he had accepted them, and he is, under the facts as shown in this record, justly and legally liable to appellants for the price at which the cigars were billed to him.

The judgment of the County Court must therefore be reversed and the case remanded.

*Reversed and remanded.*